Domenic SUAREZ, a minor, by his Next Friend Elizabeth SUAREZ, and Elizabeth Suarez, Individually, Plaintiffs,

v.

WILMINGTON MEDICAL CENTER, INCORPORATED, a corporation of the State of Delaware, Katherine Esterly, M.D., Patricia Purcell, M.D., Ralph S. Milner, M.D., Ralph S. Milner, M.D., P.A., and Janaki B. Kaza, Defendants.

Superior Court of Delaware, New Castle County.

Submitted: Dec. 4, 1986.
Decided: April 9, 1987.

Harold Schmittinger and Charles White-hurst of Schmittinger & Rodriguez, Wilmington, for plaintiffs.

Victor F. Battaglia and Wayne A. Marvel of Biggs & Battaglia, Wilmington, for defendant Milner.

O'HARA, Judge.

Presently before the Court is a motion for summary judgment filed by defendant Ralph S. Milner, M.D. in the above captioned case. For the reasons stated herein, defendant's motion is granted.

Domenic Suarez is a minor child born prematurely on June 11, 1982 at Kent General Hospital in Dover, Delaware. At birth, which occurred at a gestational age of approximately 29 weeks, the baby suffered from numerous medical problems which necessitated a transfer to the Delaware Division of the Wilmington Medical Center ("WMC"). While at WMC, the baby received supplemental oxygen from June 11 until June 24, 1982. On July 13, defendant Dr. Katherine Esterly, the physician charged with baby Suarez's care while at WMC, requested that Dr. Ralph Milner, a specialist in pediatric opthalmology, examine the baby's eyes because of the risk of retinopathy of prematurity and retrolental fibroplasia occasioned by the use of supplemental oxygen in such cases. Defendant Milner's examination revealed no abnormalities and no recommendations as to follow-up examinations were made.

On August 13, 1982 baby Suarez was discharged from WMC. His progress was followed thereafter by defendant Dr. Janaki Kaza. Dr. Kaza saw the baby on September 24 at which time she noticed an abnormality in the infant's eyes. Dr. Kaza referred the baby to Dr. Milner who discovered upon examination that the child had developed Stage V retrolental fibroplasia, the most serious stage of the disease.

Plaintiff alleges in his case against Dr. Milner that the doctor failed to perform timely examinations which would have revealed the presence of the condition at an earlier stage of development. In support of his motion for summary judgment, Dr. Milner contends that plaintiff has produced

insufficient evidence to demonstrate that he failed to conform to the standard of care for opthalmologists in the community.

■■■ A party moving for summary judgment must properly support the motion before the burden shifts to the non-moving party to show that a genuine issue of fact remains for trial. The Delaware Supreme Court has noted that

> [i]n the context of a negligence action "supported" means that the moving party submitted proof that he had conformed to the requisite standard of care under the circumstances at issue. For [purposes of a medical malpractice case] that requires a showing (a) as to the relevant medical standards adhered to by physicians in good standing in the community under like circumstances, and, (b) that defendant's conduct was in conformity with those standards.... If the conduct is shown to have conformed to the standards, then the burden shifts to plaintiff to demonstrate on the record that there is a genuine issue for trial as to either the standard on the conduct.

*Hurtt v. Goleburn,* Del.Supr., 330 A.2d 134, 135 (1974). Delaware law since 1976 has required that the party alleging medical malpractice produce expert medical testimony as to the alleged deviation from the applicable standard of care. 18 *Del.C.* § 6853.[1] By inference from that statute a defendant in a medical malpractice action seeking summary judgment is similarly required to produce an expert in order to satisfy his initial burden of proving that he conformed to the community standards.[2]

The record in this case demonstrates that defendant Milner has carried his burden of showing, through expert testimony, that his actions regarding the baby Suarez case did not breach the standard of care existing in the community at that time. Dr. Neil T. Choplin, an ophthalmologist employed by the United States Navy and working at the Wills Eye Hospital in Philadelphia, testified at deposition that both the timing of the first examination and the failure to insure follow-up examinations did not represent a breach of the standard of care owed by defendant Milner to the plaintiff. Dr. Choplin, who is plaintiff's own medical witness, noted that the responsibility of insuring that eye examinations are given at appropriate times falls on the attending physician rather than the opthalmologist, and that the opthalmologist generally does not retain responsibility for follow-up examinations unless an abnormality is discovered.[3]

---

1. The section provides in part that

   [n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death. 18 *Del.C.* § 6853. This statute was included in a package of laws designed to address the problems created by the number of malpractice suits filed in the State and the resulting increase in the cost of liability insurance coverage for health care providers. *See* Act of April 26, 1976, c. 373, 60 Del.Laws 1083, 1083–84 (preamble).

2. An "expert witness" is defined in 18 *Del.C.* § 6854, which provides:

   (a) No person shall be competent to give expert medical testimony as to applicable standards of skill and care unless such person is familiar with that degree of skill ordinarily employed in the community or locality where the alleged malpractice occurred, under similar circumstances, by members of the profession practiced by the health care provider; provided, however, that any such expert witness need not be licensed in the State.

   (b) Any physician who has been in the active practice of medicine or surgery for at least the past 5 years and who currently practices in the State or within a State contiguous to the State and within a radius of 75 miles of the Capitol of the State shall be presumed to be competent to give expert medical testimony as to applicable standards of skill and care, if it shall be established that the degree of skill and care required of the expert in the locality where the expert practices or teaches is of the same or equivalent standard as the skill and care employed in the community or locality where the alleged malpractice occurred.

3. Over the continued objection of attorneys representing the defendants in this case, the following deposition testimony was elicited from Dr. Choplin by plaintiff's attorney:

   Q. Fine. Let's keep it in 1982. Was there a consensus as to when an eye examination should be performed for an infant at risk for RLF?

   .  .  .  .

   A. Consensus of opinion was at discharge from the nursery.

This testimony clearly establishes conformity with the standard of care by defendant Milner and accordingly shifts the burden to the plaintiff to demonstrate a material issue as to either the standard or the conduct.

Plaintiff first argues that he should be permitted to prove a malpractice through the expert testimony of the defendant physicians or defense witnesses and that Dr. Choplin's testimony regarding Milner's conformity with the standard of care may well be rejected by the trier of fact. The Court notes, however, that these contentions do not advance plaintiff's cause in opposing the summary judgment motion by demonstrating, through the use of expert medical testimony, that a material issue of fact remains as to the applicable standard or the conduct engaged in by the defendant.

■■■ Plaintiff next argues that nonconformity with the standard of care is demonstrated through the testimony of Drs. Purcell and Esterly, both pediatricians and codefendants on this case. While there is authority suggesting that a general practitioner is not incompetent to testify in an action against a specialist solely because he is not also a specialist the authorities generally require the non-specialist to demonstrate that that he has sufficient knowledge of the subject upon which his testimony is sought to entitle his opinion to go to the trier of fact. Annot., 31 A.L.R.3d 1163, 1166–67 (1970). The Court agrees with this approach to the issue. Plaintiff offers the testimony of these non-specialists to show the applicable local community standard governing the conduct of opthalmologists in performing follow-up examinations. Drs. Purcell and Esterly have not demonstrated, however, that they have attained the knowledge necessary to make such determinations. Accordingly the Court cannot accept their testimony as expert evidence in this area.

■■■ Plaintiff lastly contends that Dr. Melvin Musceles, M.D. will testify that eye examinations should be performed when an individual is removed from oxygen, at discharge from the hospital, and three to six weeks thereafter. As defendant Milner correctly points out, however, expectations are insufficient to carry the non-moving party's burden under Superior Court Rule 56. A motion for summary judgment must be decided on the record presented and not on evidence potentially possible. *Rochester v. Katalan*, Del.Supr., 320 A.2d 704, 708 n. 7 (1974). Plaintiff's representations

Q. Okay. Now, Doctor, the time frame that's recognized by the American Academy of Pediatrics for eye examinations of newborns who are at risk for RLF, would you consider that to be a national standard of care?

.    .    .    .    .

A. Yes.
Q. Okay. And why do you consider that a national standard of care?

.    .    .    .    .

A. The American Academy of Pediatrics is a national organization and board certified pediatricians would be held to the standards set forth by the Academy.

.    .    .    .    .

Q. Doctor, given the time frame when Domenic was first examined by Dr. Milner, was it a breach of the standard of care for that eye examination to be performed by him at that time?
A. I would think not.

.    .    .    .    .

Q. Was it a breach of the standard of care for a consultation to be requested at that time?

.    .    .    .    .

A. Yes.

.    .    .    .    .

Q. Why was it a breach, Doctor?
A. It was not in keeping, in line with the recommendations of the American Academy of Pediatrics.
Q. Doctor, when a consultation is requested for an ophthalmologist and specifically in this instance what is the responsibility of the ophthalmologist?
A. The ophthalmologist is responsible for carrying out the request of the attending physician.
Q. And once that is done, then does the ophthalmologist retain any responsibility for examining the infant again?
A. I would think not unless something abnormal was discovered.
Q. In this case nothing abnormal was discovered; is that correct?
A. That's correct.

.    .    .    .    .

Q. Doctor, was it a breach of the standard of care for Dr. Milner to fail to insure that this eye examination was performed prior to discharge?
A. No.

as to the purported testimony of Dr. Musceles do not constitute present expert medical testimony and therefore cannot be accepted as such.

■ The Court finds that the plaintiff has failed to demonstrate through proper evidence that a material issue remains with respect to either the applicable standard of care or defendant Milner's conduct. Accordingly defendant Milner's motion for summary judgment must be granted.

IT IS SO ORDERED.