Domenic SUAREZ, a minor, by his next friend, Elizabeth SUAREZ, and Elizabeth Suarez, individually, Plaintiffs,

v.

WILMINGTON MEDICAL CENTER, INCORPORATED, a corporation of the State of Delaware, Katherine Esterly, M.D., Patricia Purcell, M.D., Ralph S. Milner, M.D., Ralph S. Milner, M.D., P.A., and Janaki B. Kaza, M.D., Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 5, 1987.
Decided: Oct. 9, 1987.

Harold Schmittinger, and Charles E. Whitehurst, of Schmittinger & Rodriguez, Dover, for plaintiffs.

Victor F. Battaglia, and Wayne A. Marvel, of Biggs and Battaglia, Wilmington, for defendant Purcell.

Robert J. Katzenstein, of Lassen Smith, Katzenstein & Furlow, Wilmington, for defendant Kaza.

## OPINION

GEBELEIN, Judge.

Defendants Patricia Purcell, M.D., and Janaki B. Kaza, M.D. have filed motions for summary judgment. These motions have been consolidated for purposes of disposition.

The facts of this case indicate that Domenic Suarez is a minor child born approximately seven weeks premature on June 11, 1982 at Kent General Hospital in Dover, Delaware. At birth, the baby suffered from numerous health problems, including respiratory distress syndrome, which necessitated his transfer to the Delaware Division of the Wilmington Medical Center

("WMC"). While at WMC, the baby received supplemental oxygen from June 11 until June 24, 1982. On July 13, defendant Katherine Esterly, the child's attending pediatrician while at WMC, requested that Dr. Ralph Milner, a pediatric ophthalmologist, examine the baby's eyes due to the risk of retinopathy of prematurity and retrolental fibroplasia occasioned by the use of oxygen in such cases. Defendant Milner's examination revealed no abnormalities, and no recommendations as to follow up examinations were made.

On August 4, defendant Purcell, a pediatrician, assumed the care of baby Suarez from Dr. Esterly, who was leaving for vacation. At that time, Dr. Esterly advised Dr. Purcell that the child had been administered an ophthalmologic examination, and that no further treatment was contemplated. On August 13, 1982, baby Suarez was discharged from WMC.

Thereafter, the child's progress was followed by defendant pediatrician Janaki Kaza, M.D. Dr. Kaza first saw the child on August 23, at which time the child's eyes were examined with an ophthalmoscope. The examination was normal. Dr. Kaza again saw the baby on September 24, when she noticed an abnormality in the infant's eyes. Dr. Kaza referred the baby to Dr. Milner, who discovered upon examination that the child had developed stage V retrolental fibroplasia, the most serious stage of the disease.

Plaintiff filed suit alleging that WMC and the named defendants were negligent in failing to perform timely examinations upon baby Suarez which would have revealed the presence of the condition at an earlier stage of development. Following discovery, defendants Milner, Purcell and Kaza individually moved for summary judgment. Dr. Milner's motion was granted by this Court at 526 A.2d 574 (1987). The remaining motions will be analyzed separately.

A party moving for summary judgment must properly support the motion before the burden shifts to the non-moving party to show that a genuine issue of fact remains for trial. The Delaware Supreme Court has noted that

[i]n the context of a negligence action "supported" means that the moving party submitted proof that he had conformed to the requisite standard of care under the circumstances at issue. For [purposes of a medical malpractice case] that requires a showing (a) as to the relevant medical standards adhered to by physicians in good standing in the community under like circumstances, and, (b) that defendant's conduct was in conformity with those standards.... If the conduct is shown to have conformed to the standards, then the burden shifts to plaintiff to demonstrate on the record that there is a genuine issue for trial as to either the standard on (sic) the conduct. *Hurtt v. Goleburn*, Del.Supr., 330 A.2d 134, 135 (1974).

Delaware law requires that the party alleging medical malpractice produce expert medical testimony as to the alleged deviation from the applicable standard of care. 18 *Del.C.* § 6853.[1] By inference from that statute a defendant in a medical malpractice action seeking summary judgment is similarly required to produce an expert in order to satisfy his initial burden of proving that he conformed to the community standards. *Suarez v. Wilmington Medical Center, Inc.*, Del.Super., 526 A.2d 574, 576 (1987).

## I.

■ The record in this case demonstrates that Dr. Purcell has carried the burden of showing, through expert testimony, that her actions with respect to baby Suarez did not breach the standard of care existing in the community. Dr. Purcell first directs this Court to the applicable standard of care, which is embodied in the WMC Policy Manual, Policy Number 6752.

1. The section provides in part that:
   [n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death.

The policy states that the eyes of infants who have received oxygen within their first month of life should be examined by an ophthalmologist "before discharge". No definition of "before discharge" appears in the manual, but Dr. Purcell testified in deposition that the policy is not interpreted to require an ophthalmic consultation be made at any specific time prior to discharge. Rather, both Drs. Esterly and Purcell indicated that in keeping with the WMC policy, a single eye examination is required to be done when the supplemental oxygen is discontinued and the child is stabilized. Dr. Purcell stated that there was compliance with the standard since the infant was examined by Dr. Milner on July 13, approximately three weeks after the oxygen had been discontinued, and the child determined to be stable. Dr. Purcell was advised by Dr. Esterly that the required examination had been performed, and that since no dysfunction was discovered, additional ophthalmologic consultation was not contemplated. This testimony clearly establishes conformity with the standard of care by defendant Purcell, and accordingly shifts the burden to the plaintiff to demonstrate a material issue as to either the standard or the conduct. *See, Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979).

In opposition to defendant's motion, plaintiff offers the affidavit of Dr. Melvin A. Museles, who testified that the applicable standard of care should be that contained in the American Academy of Pediatrics Recommendations on Oxygen Use, and that Dr. Purcell's conduct amounted to a breach of this standard. The defendant argues, however, that Dr. Museles fails to meet the statutory criteria to qualify as an expert under 18 *Del. C.* § 6854, and that his testimony should, therefore, be stricken.

Title 18, § 6854 of the *Delaware Code* sets forth the requirements that must be met prior to qualifying under § 6853 as an expert in a medical negligence case. Section 6854 states:

(a) No person shall be competent to give expert medical testimony as to appli-cable standards of skill and care unless such person is familiar with that degree of skill ordinarily employed in the community or locality where the alleged malpractice occurred, under similar circumstances, by members of the profession practiced by the health care provider; provided, however, that any such expert witness need not be licensed in the State.

(b) Any physician who has been in the active practice of medicine or surgery for at least the past 5 years and who currently practices in the State or within a State contiguous to the State and within a radius of 75 miles of the Capitol of the State shall be presumed to be competent to give expert medical testimony as to applicable standards of skill and care, if it shall be established that the degree of skill and care required of the expert in the locality where the expert practices or teaches is of the same or equivalent standard as the skill and care employed in the community or locality where the alleged malpractice occurred.

In interpreting subsection (a), our Supreme Court, in *Loftus v. Hayden,* Del.Supr., 391 A.2d 749 (1978), has stated:

[T]he "familiar requirement of § 6854 means having more than a fair knowledge of the skill ordinarily employed in the community in question. We think that a witness offered to give "expert medical testimony" should establish that he "knows" what degree of skill is ordinarily employed here and that he is well acquainted or thoroughly conversant with it.

\* \* \* \* \* \*

When a Trial Court must determine whether a medical expert has the requisite credentials under § 6854, all relevant factors must be considered and balanced before a ruling is made. The witness should be permitted to show that he acquired the necessary "familiarity" in multi-various ways; for example, by:

1) direct observation in Delaware;

2) study in Delaware (as a medical student on rotation, as an intern or as a resident) (citation omitted);

3) care of Delaware patients referred by Delaware physicians;

4) teaching of students who have dispersed to Delaware;

5) readings of Delaware medical records, reports, journals, and the like;

6) consultations with Delaware physicians;

7) attendance at meetings with Delaware doctors.

*Id.* at 752–53.

An examination of Dr. Museles curriculum vitae indicates that he has not acquired that level of familiarity required by § 6854(a). No where is it suggested that Dr. Museles is in any way acquainted with the applicable standard of care in Delaware, nor is there any reference to his possessing such familiarity via satisfaction of any of the methods enunciated in *Loftus.* In fact, Dr. Museles' testimony regarding his understanding of the applicable standard was related in his affidavit as follows:

> It is further my opinion that the timing of the eye examinations as recommended by the American Academy of Pediatrics for infants at risk for RLF is the standard of care at the facilities in which I have practiced and *should be* the standard of care in the Wilmington, Delaware area. (Emphasis added)[2]

But testimony regarding what the standard should be is inapposite to the inquiry of what the standard is. This Court, therefore, concludes that Dr. Museles fails to qualify as an expert under § 6854(a).

Similarly, Dr. Museles fails to meet the requirements of § 6854(b). This subsection establishes three conditions which an out-of-state physician must meet in order to be presumed competent to give expert medical testimony regarding the applicable standard of care. The first is that the physician must have been in the actual practice of medicine or surgery for the preceding five years. The second requires the attesting physician to demonstrate that he currently practices in a state contiguous to Delaware, within 75 miles of Dover, Delaware. Finally, the standard of care of the contiguous state must be the same as that in Dover. This Court is of the opinion that Dr. Museles does not meet any of these requirements.

As per the first condition of § 6854(b), Dr. Museles' curriculum vitae indicates that over the past five years, he has been an administrator of two health delivery systems (February 18, 1985 to the present), executive director of a medical fraternity (November, 1982 to February 18, 1985) and Assistant Chief for Professional Development for the Navy Bureau of Medicine and Surgery (July, 1979 to November, 1982). None of these descriptions mentions any treatment of patients in an "active practice", nor is there such mention in Dr. Museles' affidavit. In fact, the curriculum suggests that Dr. Museles has not been in the active practice of pediatrics since March, 1971. With respect to the second prong, the record discloses that Dr. Museles is a licensed pediatrician in Massachusetts, Maryland and the District of Columbia. But plaintiffs have made no effort to establish, as is their burden, that Dr. Museles practices within 75 miles of Dover. Finally, Dr. Museles' contention that the American Academy of Pediatrics recommendations embodies the standard of care as he knows it does not address whether those recommendations represent the same standard of care as that practiced in Dover, Delaware.

---

**2.** Dr. Museles supplemented his testimony with a second affidavit, in which he concluded:

4. The failure of Drs. Esterly and Purcell to ensure that an eye examination was performed on Domenic Suarez at discharge from the hospital (within one week of the date of discharge) was a breach of the standard of care as I know it and violated the standards and recommendations of the American Academy of Pediatrics which are applicable to Board Certified pediatricians.

However, since this statement provides no additional insight regarding Dr. Museles' familiarity with the applicable standard of care in Delaware, it adds little to his original assertion that the American Academy of Pediatrics recommendations should control in this State. Since this Court has determined that an opinion as to what the standard should be and what it is are undeniably two different issues, the Court addresses only Dr. Museles' first conclusion.

Where the record is totally devoid of any alleged facts from which the court could conclude that plaintiffs' expert possesses any familiarity with the applicable Delaware standard of care, the experts affidavit is inadmissible. *See Taylor v. Wilmington Medical Center, Inc.*, 577 F.Supp. 309, 313 (D.Del.1983), *aff'd mem.* 780 F.2d 1016 (3rd Cir.1985). The Court concludes that Dr. Museles has failed to qualify as an expert witness under 18 *Del.C.* § 6854, and his testimony is therefore stricken. This Court further concludes that notwithstanding Dr. Museles testimony, the plaintiffs would have failed to demonstrate on the record that there exists a genuine issue of fact as to whether the defendants' conduct violated the existing Delaware standard of care. Defendant Purcell's motion for summary judgment is, therefore, GRANTED.

## II.

■ This Court is similarly persuaded that Dr. Kaza has carried the burden of showing, via expert testimony, that her conduct regarding baby Suarez did not breach the applicable standard of care. Dr. Kaza testified that the standard practice concerning the care of premature infants at risk for retrolental fibroplasia depends upon the diagnosis of the pediatric ophthalmologist after the child's first eye exam. Where the eye examination indicates an abnormality, it is the responsibility of the ophthalmologist to decide what follow-up treatment is in order. Where, however, no abnormality is discovered, and no follow-up treatment is ordered, the treating physician refers the child to the ophthalmologist for a routine examination at three to six months of age. Here, Dr. Kaza complied with the standard by referring baby Suarez to Dr. Milner at approximately 3½ months of age. In addition, plaintiffs offered the affidavit of David A. Levitsky, M.D., a pediatrician who has practiced in Wilmington, Delaware since 1954. Dr. Levitsky concluded that Dr. Kaza's care of baby Suarez was in complete conformity with the applicable community standard of care.[3]

In opposition to defendant's motion, plaintiff offers the affidavit of Dr. Melvin Museles. But as this Court concluded in part I of this opinion, Dr. Museles fails to meet the statutory criteria to qualify under 18 *Del.C.* § 6854 as an expert, and, as such, plaintiffs are foreclosed from using his testimony. This Court concludes, therefore, that defendant Kaza has established compliance with the applicable standard of care in the community. The burden then shifted to the plaintiffs to demonstrate that Dr. Kaza breached the existing Delaware standards of care. This they have failed to do. Defendant Kaza's motion for summary judgment is, therefore, GRANTED.

IT IS SO ORDERED.

3. Dr. Levitsky's conclusions are as follows:

10. When Dr. Kaza first saw Domenic following his discharge from the hospital, she correctly assumed that as a premature infant at the Wilmington Medical Center, he had been examined by a pediatric ophthalmologist. It is the responsibility of the pediatric ophthalmologist who examines the eyes of a premature infant, and not the responsibility of the treating pediatrician, to decide whether or not any follow-up ophthalmological evaluation or consultation is necessary.

11. For the reasons set forth in paragraphs 5 through 11 of this Affidavit it is my opinion that the care rendered by Dr. Kaza in this case was appropriate in all respects and there was no deviation from the standard of care in 1982 and remains true at the present time.