Augustus GREEN, Administrator of the Estate of Rosa Green, Deceased, and Augustus Green, individually, Richard Green, Mary Bond, Alfred Green, Emmitt Green, Dolores Starling, Wardell Green, and Muhammad is Muniyr, Plaintiffs Below, Appellants,

v.

Henry L. WEINER, M.D., Defendant Below, Appellee.

No. 294, 1999.

Supreme Court of Delaware.

Submitted: Oct. 17, 2000.
Decided: Jan. 12, 2001.

John M. Bader, of Tomar, O'Brien, Kaplan, Jacoby & Graziano, Wilmington, Delaware; James F. McBride, (argued), of Farage, McBride & Ruggieri, Philadelphia, Pennsylvania, for Appellants, of counsel.

John A. Elzufon, of Elzufon & Austin, P.A., Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

VEASEY, Chief Justice:

The sole question to be decided in this medical malpractice case is whether a medical expert's testimony adequately specified the applicable standard of care and a breach of that standard in accordance with 18 *Del. C.* § 6853. The Superior Court trial judge found that the expert's testimony was deficient in both respects and granted the defendant doctor's motion for judgment as a matter of law. We hold that the expert's proffered testimony provided sufficient evidence of both the standard of care and of the doctor's breach of that standard to create a genuine issue of material fact on the question of negligence.

Accordingly, the judgment of the Superior Court is reversed. The matter is remanded to the Superior Court for proceedings consistent with this opinion.

### Facts

On December 6, 1993, Henry Weiner, M.D., performed a cardiac pacemaker implant procedure on Rosa Green at St. Francis Hospital in Wilmington. The procedure involved the insertion of two guidewire catheters through Green's vein and artery. During the procedure, Dr. Weiner was unable to advance the guidewire through Green's vein, and as a result had to withdraw it from the vein. As Dr. Weiner withdrew the guidewire, Green ex-

perienced chest pain, a sudden significant drop in blood pressure, cardiac arrest, and ultimately death.

On November 28, 1995, Green's family filed a complaint against Dr. Weiner and St. Francis Hospital alleging that Dr. Weiner's negligent removal of the guidewire caused Green's death.[1] The Greens retained a cardiologist, Donald Kahn, M.D., to testify as an expert on their behalf. On December 15, 1997, Dr. Kahn submitted a report detailing his opinion of Dr. Weiner's performance, and on May 26, 1998, defense counsel deposed Dr. Kahn.

During pre-trial proceedings, the Greens indicated that they might submit a transcript of Dr. Kahn's 1998 deposition and his 1997 report in place of Dr. Kahn's live testimony. In response, Dr. Weiner requested permission to present a motion to dismiss the Greens' claims at a May 28, 1999 pre-trial conference. At the time of this conference, however, the Greens still did not know whether Dr. Kahn would testify live at trial. The Superior Court advised the parties that if Dr. Kahn did not testify live at trial, the court would convert Dr. Weiner's motion to dismiss into a motion for summary judgment and would decide the motion on the day of the trial.

On the morning of the trial, the Greens informed the Superior Court that Dr. Kahn would not testify live. After a brief oral argument, the Superior Court then considered the matter as submitted on summary judgment and granted Dr. Wein-

er's motion for judgment as a matter of law. The Superior Court found that Dr. Kahn's deposition and report failed to specify the applicable standard of care and failed to show that Dr. Wiener breached that standard. The Greens now appeal the judgment of the Superior Court.

## Standard of Review

The Superior Court decided Dr. Weiner's motion to dismiss based on the proffered testimony of Dr. Kahn, the Greens' sole expert witness. In essence, this motion constituted a demurrer to the Greens' evidence of negligence. We review the Superior Court's decision to grant a motion for judgment as a matter of law "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute."[2] Moreover, if the nonmoving party fails to produce sufficient evidence to prove an element of that party's case, the moving party is entitled to a judgment as a matter of law.[3]

## Evidentiary Requirements under the Delaware Medical Malpractice Statute

Under 18 *Del. C.* § 6853,[4] a party alleging medical malpractice must produce expert medical testimony that specifies (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation

---

1. On June 30, 1998, St. Francis was voluntarily dismissed as a defendant in this action. On March 8, 1999, the Superior Court dismissed that portion of the Greens' complaint alleging that Dr. Weiner failed to obtain valid informed consent.

2. *Burkhart v. Davies,* Del.Supr., 602 A.2d 56, 58–59 (1991) (citing *Benge v. Davis,* Del. Supr., 553 A.2d 1180, 1182 (1989)); *see also Wagner v. Olmedo,* Del.Supr., 365 A.2d 643, 645 (1976) (holding that at the summary judgment stage in a medical malpractice case, "plaintiffs are, of course, entitled ... to the benefit of any inferences").

3. *See Burkhart,* 602 A.2d at 58–59 (quoting *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

4. 18 *Del. C.* § 6853 provides:

   No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death. .... Except as otherwise provided herein, there shall be no inference or presumption of negligence on the part of a health care provider.

and the alleged injury.[5] A defense motion for summary judgment, by contrast, does not require a supporting expert's affidavit if the parties have adequate time for discovery and if "the record unambiguously reflects that the plaintiff's allegations are not and will not be supported by any expert medical testimony."[6]

As an initial matter, Dr. Weiner suggested at oral argument that Dr. Kahn's 1997 report should not be used as evidence in deciding his motion for judgment as a matter of law. The Superior Court considered Dr. Kahn's report in ruling on Dr. Weiner's motion when it concluded: "The fact is that nowhere in [Dr. Kahn's] report or in his deposition does he say what the standard of care was and how specifically Dr. Weiner breached it...."[7] During his deposition, Dr. Kahn verified his 1997 report and agreed that he would testify consistently with that report if he appeared at trial. In effect, Dr. Kahn's report became part of his deposition although Dr. Kahn did not read the contents of the report into the record of the deposition.[8]

In the present case, the parties dispute only whether Dr. Kahn's deposition and his accompanying report provide sufficient evidence from which a jury could reasonably infer the appropriate standard of care and Dr. Weiner's breach of the standard under 18 *Del. C.* § 6853.[9] Section 6853 does not require medical experts to couch their opinions in legal terms or to articulate the standard of care with a high degree of legal precision or with "magic words."[10] Similarly, to survive a motion for judgment as a matter of law, the Greens are not required to provide uncontradicted evidence of the elements of their negligence claim. Instead, the Greens must provide credible evidence of each of these elements from which a reasonable jury could find in their favor.[11] So long as

**5.** See *Russell v. Kanaga,* Del.Supr., 571 A.2d 724 (1990).

**6.** *Burkhart,* 602 A.2d at 60. In contrast, where the plaintiff in a medical malpractice action does produce sufficient expert medical testimony on the elements of negligence, the defendant must present expert testimony that satisfies the defendant's initial burden of proving that she conformed to the standard of medical care in the community. See *Suarez v. Wilmington Medical Center, Inc.,* Del.Super., 526 A.2d 574, 576 (1987). If the defendant can prove that she conformed to the requisite standard of care, the burden shifts back to the plaintiff to show that no genuine issue of fact remains concerning the applicable standard or the defendant's conduct. See *Hurtt v. Goleburn,* Del.Supr., 330 A.2d 134, 135 (1974); *see also Wahle v. Medical Center of Delaware, Inc.,* Del.Supr., 559 A.2d 1228, 1230–31 (1989) (describing requirements of section 6853).

**7.** Tr. at 37.

**8.** *Cf. Walton v. Galinat,* Del.Supr., No. 216, 2000, 2000 WL 1504937 (Aug. 28, 2000) (ORDER) (affirming dismissal of malpractice claim based on inadequacy of medical expert's deposition and accompanying report).

**9.** *Cf. Mazda Motor Corp. v. Lindahl,* Del.Supr., 706 A.2d 526, 530 (1998) ("[W]e will not disturb a Superior Court ruling denying a motion for judgment as a matter of law where 'under any reasonable view of the evidence the jury could have justifiably found for [the non-moving party].'") (quoting *Parks v. Ziegler,* Del.Supr., 221 A.2d 510, 511 (1966)); *Russell v. Kanaga,* Del.Supr., 571 A.2d 724, 731 (1990) (observing that nonmoving party is entitled to all reasonable factual inferences from evidence in the context of a judgment as a matter of law).

**10.** See *Barriocanal v. Gibbs,* Del.Supr., 697 A.2d 1169, 1172–73 (1997). In *Barriocanal,* we disagreed with the Superior Court's interpretation of Delaware's informed consent statute, see 18 *Del. C.* § 6852, observing that the statute does not "require[] an expert to articulate certain 'magic words'" because "[t]his interpretation would exalt form over substance." *Id.* The same principle applies with equal force to the medical malpractice statute.

**11.** *Cf. Barriocanal,* 697 A.2d at 1172–73 ("[T]he trial court should have evaluated the substance of the proffered [medical expert] testimony as a whole to determine if it was sufficiently reliable to present to the jury. The jury's role then would be to evaluate the weight of the testimony."); *DiFilippo v. Preston,* Del.Supr., 173 A.2d 333, 336 (1961) ("Of necessity, that standard [of care to which a surgeon is to be held] is a question of fact to

Dr. Kahn's testimony provides this minimal evidence, any inconsistencies in Dr. Kahn's testimony must be resolved by a jury and are thus irrelevant for purposes of ruling on a motion for judgment as a matter of law.

■ We find that Dr. Kahn's 1997 report and his 1998 deposition satisfy this minimum evidentiary requirement. In his report, Dr. Kahn opined that "considerable force had to have been used [in removing the guidewire from Green's vein] to cause pain and a rip large enough to result in massive hemorrhage." Based on this fact, Dr. Kahn asserted in his report that "this adverse outcome was operator dependent and ... with the exercise of reasonable care, could and should have been avoided." During his deposition, Dr. Kahn also testified that he had "no other way of explaining [the rip in Green's vein] other than that an operator dependent vascular injury occurred and in my view should have been recognized or anticipated and as a result possibly and probably avoided." Although Dr. Weiner argues that such inferences would amount to impermissible speculation by Dr. Kahn,[12] we find that Dr. Kahn's "opinion was based on his analysis of the circumstances of this case, not mere speculation over the cause of a bad result."[13] Any contention that Dr. Kahn was speculating would go to the weight of the evidence and thus presents a jury question.

■ From this evidence, a jury could reasonably infer that the applicable stan-

dard of care requires a treating doctor to withdraw a pacemaker guidewire with a degree of force sufficient to remove the wire without seriously damaging the patient's blood vessel. Although a more straightforward explanation of the applicable standard of care undoubtedly would have simplified matters, Dr. Kahn's testimony provides a sufficient basis for a permissible inference of negligence.[14] The jury could reasonably infer that Dr. Weiner breached this standard of care by applying "considerable force" to withdraw the guidewire from Green's vein.[15] As a consequence, we find that the Greens produced sufficient expert testimony to raise an issue of material fact with respect to all of the elements of a medical malpractice claim under 18 *Del. C.* § 6853.

### Conclusion

Because the Greens produced sufficient evidence of the applicable standard of care and of Dr. Weiner's alleged breach of that standard, we find that the Superior Court erred by granting Dr. Weiner's motion for judgment as a matter of law. Accordingly, we reverse the judgment of the Superior Court and remand the case for proceedings consistent with this opinion.

---

be determined by the testimony of expert witnesses.").

12. *See Timblin v. Kent Gen. Hosp.,* Del.Supr., 640 A.2d 1021, 1024 (1994) ("It is also well established that a plaintiff cannot use evidence that a medical procedure had an unusual outcome to create an inference that the proper standard of care was not exercised.") (citations omitted).

13. *Balan v. Horner,* Del.Supr., 706 A.2d 518, 521 (1998) (finding that medical expert's testimony had sufficient support in the evidence despite the fact that the expert did not know exactly how operation in question proceeded).

14. *Cf. Strauss v. Biggs,* Del.Supr., 525 A.2d 992, 997 (1987) ("Although direct testimony linking the alleged negligence to the prolonging of discomfort would have been helpful, under the circumstances of this case the expert testimony was sufficient to allow this claim to go to the jury.").

15. In addition, Dr. Kahn implied that a lesser degree of force was probably required to withdraw the guidewire in the instant case because Green's veins were "old and brittle."