IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

LA MAR GUNN, THE KENT COUNTY     :
REPUBLICAN COMMITTEE, and        :     C.A. No: K14M-11-010 RBY
THE DELAWARE REPUBLICAN          :
PARTY,                           :
                                 :
_____Petitioners,            :
                                 :
    v.                           :
                                 :
BETTY LOU MCKENNA, THE KENT      :
COUNTY BOARD OF CANVASS, and     :
THE KENT COUNTY DEPARTMENT       :
OF ELECTIONS,                    :
                                 :
    Respondents.                 :

*Submitted: December 5, 2014*
*Decided: December 23, 2014*

***Upon Consideration of Respondent's
Motion to Dismiss
GRANTED IN PART and DENIED IN PART***

***Upon Consideration of Petitioner's
Petition to Contest the Election
GRANTED***

**ORDER**

Richard A. Forsten, Esquire, Saul Ewing, LLP, Wilmington, Delaware for Petitioners.

John W. Paradee, Esquire, Prickett, Jones & Elliott, P.A., Dover, Delaware for Respondents.

Young, J.

## SUMMARY

Presently before the Court are two motions arising out of the November 2014 Election for the Kent County Recorder of Deeds, one filed by each of the two candidates for the post: La Mar Gunn, and Betty Lou McKenna. Originally, Mr. Gunn was declared the victor of the Election by 2 votes. Following the Election, the Kent County Board of Canvass ("the Board of Canvass") conducted three recounts of the absentee ballots. Each of the three counts yielded a different vote count. The Board of Canvass certified the third recount, officially holding Ms. McKenna to be the winner.

Mr. Gunn, the Delaware Republican Party, and the Kent County Republican Committee ("Petitioners") have filed a petition to contest the decision of the Board of Canvass, pursuant to 15 *Del. Code* § 5941(1). In response, Ms. McKenna moves to dismiss the petition, arguing a lack of standing to bring the claim.

The crux of the parties' dispute concerns the definition of "malconduct," and whether the Board of Canvass' actions entitle Mr. Gunn to contest the Election result. The Court finds that La Mar Gunn has proper standing to bring the petition. In the interest of preserving the democratic process of elections, the Department of Elections will conduct an additional hand recount to determine the true victor. Thus, Mr. Gunn's Petition is **GRANTED** and Ms. McKenna's Motion to Dismiss is **GRANTED** in part, and **DENIED** in part.

## FACTS AND PROCEDURES

The November 4, 2014 election for Kent County Recorder of Deeds, was a contest between La Mar Gunn, the Republican Candidate, and Betty Lou McKenna,

the Democratic Candidate. On that night, the Department of Elections declared Mr. Gunn the winner by two votes: 19247 to 19245. Mr. Gunn received 18558 machine votes and 689 absentee votes. Ms. McKenna received 18445 machine votes and 800 absentee votes. Pursuant to 15 *Del. Code* § 5702, the eligibility of a candidate to apply for a recount occurs when the distance between two candidates is less than 1000 votes or less than ½ of one-percent of all votes cast. In this case, the distance was 2 votes and not 0.5%, not 0.05% but 0.005%.

Additionally, the Department of Elections then determined that 60 absentee ballots did not register a vote for either candidate. Absentee ballots are read by special scanners. Evidently, these scanners were unable to identify for whom those 60 votes were cast.

Consequently, the Board of Canvass conducted a hand recount of the absentee ballots on November 6, 2014. In fact, three counts in total were made with the following results: 1) the first recount increased Mr. Gunn's lead from 2 to 3 votes; 2) the second recount increased Mr. Gunn's lead from 3 to 7 votes; and 3) the third recount showed Ms. McKenna winning by a two vote margin.

Following these divergent recount results, the Board of Canvass considered a suggestion by Mr. Gunn that the absentee ballots be re-scanned by the Department, and that only those ballots showing no vote, be recounted by hand. According to Mr. Gunn, the Board of Canvass initially agreed to this approach, but then changed its mind. In any event, the Board of Canvass determined to certify the third recount, declaring Ms. McKenna the winner of the election for Recorder of Deeds. Mr. Gunn alleges that this decision was made arbitrarily. Ms. McKenna counters that the third

recount was certified, as it was the only one which matched up with the total number of votes cast in the Election. Mr. Gunn contests the result of the third recount, which found Ms. McKenna the victor.

## DISCUSSION

The November 2014 election for Kent County Recorder of Deeds has produced two motions: 1) Petitioners' Petition Contesting the Election; and 2) Respondent's Motion to Dismiss. These motions require the resolution of two questions: 1) whether Mr. Gunn has a statutory right to contest the election; and 2) whether this Court should order a recount to determine the victor. The Court first addresses the threshold issue of the Mr. Gunn's right to contest said election.

Both parties are in agreement that the controlling statute concerning who may bring a contest is 15 *Del. Code* § 5941. Additionally, all agree that La Mar Gunn meets the first criterion, as a "person claiming to be elected to an office to be exercised in and for any county..."[1] Ms. McKenna disputes, however, the standing of the Kent County Republican Committee ("KCRC") and the Delaware Republican Party ("DRP") to bring this petition. Presumably pursuant to a plain reading of 15 *Del. Code* § 5941, Ms. McKenna argues that neither organization is a "person claiming to be elected."[2] This is correct. The KCRC and DRP are, therefore, **DISMISSED** from this suit for lack of standing.[3]

---

[1] 15 *Del. C.* § 5941.

[2] *Id.*

[3] The Court notes that Petitioners have not formally addressed the standing issue in their papers before this Court.

Primarily, the parties disagree as to whether Mr. Gunn has articulated one of the four enumerated *causes* for an election contest. Mr. Gunn contends that subsection (1) of 15 *Del. Code* § 5941, has been satisfied by the circumstances underlying his petition: "malconduct on the part of the election officers or clerks holding the election, or any one of them."[4] The malconduct alleged is the Board of Canvass' decision to certify the third recount of the absentee ballots, since the two previous recounts showed Mr. Gunn to be the winner. Moreover, none of the recounts resulted in the same vote count. Drawing, apparently, from a related statute in Chapter 59, Mr. Gunn argues that "malconduct" is understood as "inequality" or "improper conduct."[5]

Ms. McKenna advocates for a different meaning of "malconduct." Her first argument deals with the scope of "malconduct" covered by the governing statute. She reads the statute to concern only "malconduct" relating to the "holding" of an election, where as the conduct complained of occurred outside of the Election. Ms. McKenna does not consider a recount as the "holding" of an election, which in her view is limited temporally to the *date* of the Election.[6] In the alternative, even if the recount were to be considered part of the "holding" of an election, it is Ms. McKenna's position that "malconduct" requires some kind of intentional, malicious

---

[4] 15 *Del. C.* § 5941(1).

[5] 15 *Del. C.* § 5942 (stating that "inequality" or "improper conduct" not dealing with election results does not constitute behavior leading to invalidation of election).

[6] The Recount was held on November 6, 2014, two days after the Election.

act, meant to "manipulat[e] or misrepresen[t] the true count of votes..."[7] Although there is some dispute between the parties as to what exactly transpired during the Board of Canvass' Recount, Ms. McKenna avers that the Board chose to certify the third recount as it was the only one during which the count matched the total number of votes cast in the Election. According to her position, such a decision by the *bi-partisan* Board, does not fit the nefarious action contemplated by the term "malconduct."

In considering what is meant by 15 *Del. Code* § 5941(1)'s use of "malconduct," the Court recognizes the dearth of prior case law at its disposal. It must, therefore, proceed with an exercise in statutory construction. First and foremost, when interpreting a statute, the Court must take great care to "ascertain and give effect to the General Assembly's intent."[8] The Court must then make the initial determination of whether the statute is ambiguous.[9] A statute is ambiguous where "it can reasonably be interpreted in two or more ways."[10] If ambiguous, the Court must consider the statue "as a whole, rather than in parts, and [the Court] read[s] each section in light of all others to produce a harmonious whole."[11]

To begin, the Court notes that both parties' readings of "malconduct" are

---

[7] Respondent's Letter to Court, dated November 20, 2014, at p. 2.

[8] *Sussex Cnty. Dep't Of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 422 (Del. 2013).

[9] *Id.*

[10] *Id.*

[11] *Id.* (internal quotations omitted).

6

reasonable, especially in light of the fact that subsection (1), in which the word is found, provides no other language shedding light on the Legislature's intent. As such, the Court determines the statute in this particular circumstance is ambiguous. That being said, the Court perceives Mr. Gunn's broader interpretation of its meaning, to be the correct one. This reading is in harmony with the other sections of the statute, as well as in line with the Dictionary definition of the prefix "mal."

The Court finds Mr. Gunn's citation to 15 *Del. Code* § 5942 to be especially instructive. § 5942 limits the occasions entitling election contests. It is only where the "inequality" or "improper conduct" complained of "shall have been such to procure the person whose right to have the office may be contested to be declared duly elected when he or she has not received the highest number of legal votes cast at the election."[12] In restricting the types of events warranting an election contest, the Legislature defined the "malconduct" referred to in 15 *Del. Code* § 5941(1). Neither "inequality" nor "improper conduct," strikes this Court as requiring a premeditated, intentionally malicious act on the part of an election officer. La Mar Gunn has a right, under § 5941(1), to contest the election results, which derived from alleged "improper conduct" by the Board of Canvass in choosing the third recount, where a mathematical and statistical cloud hung over this decision. Such a reading of § 5941(1) is, most importantly, in harmony with the Legislature's use of "inequality" and "improper conduct" in § 5942.

Although not dispositive, given the statutory construction standard, the

---

[12] 15 *Del. C.* § 5942 .

Dictionary definition of "mal" with its uses in other legal contexts has been a persuasive aid to this Court in its interpretation of the Legislature's intent. *Webster's New Collegiate Dictionary* defines "mal" as follows: "bad," "abnormal," *or* "inadequate."[13] Two of the three definitions contain no connotation of malicious or nefarious behavior. The Board of Canvass' conduct had only to be "abnormal" or "inadequate" in overseeing the recount. The Court is further aware of the consideration of the legal term "malpractice." In suits for professional malpractice, for example, Plaintiff need show merely that the Defendant did not conduct himself according to a standard of care required of professionals in the field.[14] Such lawsuits do not necessarily involve professionals who purposefully and wrongfully commit acts deviating from the standard of care.[15] These examples, taken together with the other sections of the statute, convince this Court that the "malconduct" required by 15 *Del. Code* § 5941, need only be action that was incorrect or deficient. The Board of Canvass did not need, and certainly did not have, any pernicious intent in choosing to certify the third recount.

The determination herein is in accord with the overriding Legislative intent and community desire to have election results accurately count every single vote cast and

---

[13]Webster's New Collegiate Dictionary 695 ( Henry Bosley Woolf et al. eds. 1973).

[14] *See e.g.*, 18 *Del. C.* § 6853(e) ("[n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care").

[15] *See e.g.*, *Green v. Weiner*, 766 A.2d 492 (Del. 2001) (allegation of malpractice stemmed from removal of catheter from patient's vein during surgery. There was no allegation the Defendant did this intentionally to cause harm to the Plaintiff).

accurately reflect in every election the desire of the majority of the electorate. As has been noted, it is imperative "that the expression of popular will is not thwarted and the integrity of the political system is maintained."[16]

Having established Mr. Gunn's right to contest the election for Recorder of Deeds, the Court **DENIES** Ms. McKenna's Motion to Dismiss.

Accordingly, then, this Court may, pursuant to 15 *Del. Code* § 5953, "make an examination of the ballots given in such an election..." Noted is Ms. McKenna's point that this particular statutory section does not come into effect until the Court has recognized a proper election contest. Therefore, Mr. Gunn's petition is **GRANTED**, and the Court proceeds under its § 5953 authority.

There exists some debate as to the method of examination that should be ordered. Indeed, Ms. McKenna deems this the "most troublesome question" in this case.[17] The absentee ballots cast in the Election could be re-scanned by the Department of Elections, with those for which no vote is registered being examined by hand. Unfortunately, the inability of the scanners to read some of the absentee ballots is a significant part of the original problem. The real concern is that the chosen method be "open," "transparent" and "accurate."[18]

Each of the three recounts conducted by the Board of Canvass yielded a different vote total and result. Evidently, this Election will be decided by a mere few

---

[16] *Chandler v. Workman*, 348 A.2d 185, 188 (Del. Super. Ct. 1975).

[17] Respondent's Letter to Court, Dated November 20, 2014, at p. 2.

[18] Petitioner's Letter to Court, Dated December 1, 2014, at ¶ 3.

votes. The adage, "every vote counts," seems plainly appropriate. Hence, this circumstance calls for another statutorily prescribed "examination of the ballots."[19] Therefore, the Department of Elections is to conduct a hand recount of the absentee ballots cast in the election for Recorder of Deeds.

Finally, the Court notes Ms. McKenna's argument that the relief sought by Mr. Gunn can be afforded only by either the Department of Elections or the Board of Canvass. As such, Ms. McKenna argues that these two bodies are indispensable parties, who should be joined to the suit. The Court and the parties addressed this contention during the November 20, 2014 teleconference. Mr. Gunn agreed to file an Amended Petition, adding the Department of Elections and Board of Canvass as Defendants to this action. This Amended Petition was filed on November 20, 2014. That having been done, this Court finds Ms. McKenna's argument to be *moot*.

## CONCLUSION

For the foregoing reasons the Court:

1) **GRANTS** Mr. Gunn's Petition to Contest the Election; and

2) **GRANTS** in part, and **DENIES** in part, Ms. McKenna's Motion to Dismiss.

**IT IS SO ORDERED**.

/s/ Robert B. Young
J.

RBY/lmc
oc:  Prothonotary
cc:  Counsel
     Opinion Distribution
     File

---

[19] 15 *Del. C.* § 5953.