**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

September 23, 2022

Mark L. Reardon, Esquire
Jessica L. Reno, Esquire
Eckert Seamans Cherin & Mellott, LLC
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801

Eric Scott Thompson, Esquire
Franklin & Prokopik
500 Creek View Rd, Suite 502
Newark, DE 19711

Patrick M. McGrory, Esquire
Tighe & Cottrell, P.A.
704 King Street, Suite 500
One Customs House
P.O. Box 1031
Wilmington, DE 19899

Amy M. Taylor, Esquire
Heckler & Frabizzio
800 Delaware Avenue, Suite 200
P.O. Box 128
Wilmington, DE 19899

> **RE:** *Marydale Preservation Assocs., LLC, et al. v. Leon M. Weiner &*
> *Assocs., Inc., et al.*
> <u>**C.A. No. N19C-05-348 AML (CCLD)**</u>

Dear Counsel,

Defendants in this construction defect case seek to exclude from trial the expert opinions of David Hoffman, P.E. and Richard Donze, DO, MPH (collectively, the "Experts"). I find the Experts' conclusions satisfy the standards for admissibility under Delaware law, and I therefore deny the motions. My reasoning follows.

**Factual Background**

The following opinion is being issued simultaneously with a memorandum opinion granting in part and denying in part various motions for summary judgment (the "Summary Judgment Opinion"). That opinion contains a detailed recitation of the parties' dispute and the various claims and defenses that will be presented at trial. Accordingly, this letter opinion contains only a brief summary of the parties and the Plaintiffs' claims.

Marydale Preservation Associates, LLC ("Marydale") owns the Marydale Retirement Village in Newark, Delaware. Catholic Ministry to the Elderly, Inc. ("CME" and collectively with Marydale, "Plaintiffs") is Marydale's Managing Member and the property manager of the retirement village. The Marydale Retirement Village consists of 108 housing units that are rented to low-income senior citizens. From June 2016 to October 2017, the Marydale Retirement Village underwent a significant renovation (the "Marydale Project"). In connection with that renovation, Plaintiffs contracted with Defendants Leon N. Weiner & Associates, Inc. ("Weiner"), LNWA Developers, LLC, LNW&A Construction Corp. (collectively with LNWA Developers, "LNWA"), and Kitchen & Associates Services, Inc. ("K&A") for the development, design, and construction of the Marydale Project. Defendant J.F. Sobieski Mechanical Contractors, Inc.

("Sobieski") was the subcontractor that installed the HVAC systems in all 108 residential units.

After the Marydale Project was complete, residents in some of the units began reporting high humidity levels in their apartments and mold growth on their belongings. By November 2018, mold growth was identified on furniture and personal belongings in 38 of the 108 units.[1]  Plaintiffs contend the HVAC systems defendants designed and installed for the Marydale Project were defective, leading to the humidity and mold problems.  In 2019, Plaintiffs filed this action seeking damages for Defendants' alleged breaches of contract and negligent design and construction.[2]  This matter is scheduled for trial beginning October 17, 2022.

Along with their summary judgment motions, Defendants filed motions challenging the admissibility of two expert opinions disclosed by Plaintiffs during discovery.  First, the defendants challenge the expert report and opinion of David Hoffman, P.E., who is Plaintiffs' standard of care expert.  Defendants argue Hoffman's opinions should be excluded because they lack any reliable factual basis and are not based on any articulated standard of care.  Moreover, Defendants contend

---

[1] Report of Harry Neill, CIH (Apr. 26, 2021) (Ex. B to Pls' Br. in Opp. to Defs' Mots. for Summ. J.).

[2] Plaintiffs asserted other claims, including misrepresentation, prohibited trade practices, breach of warranties, and civil conspiracy.  As set forth in the Summary Judgment Opinion, Plaintiffs abandoned some of these claims and the Court has granted judgment in favor of Defendants as to others.  This case will proceed to trial on theories of negligence and breach of contract.

Plaintiffs failed to provide Defendants a list of the documents Hoffman reviewed in forming his opinions, which violates Delaware Superior Court Civil Rule 26(b)(4)(A) and the "Expert Protocol" the parties agreed upon in their case management order. The remedy for this, Defendants argue, should be the exclusion of Hoffman's testimony from trial. Second, Defendants argue the expert opinion of Dr. Richard Donze, DO, MPH should be excluded because Dr. Donze's opinions are not relevant to the claims in this case and, even if his opinions are relevant, they are not based on reliable facts.

### Analysis

**A. Hoffman's proffered testimony satisfies DRE 702 and the *Daubert* factors.**

Delaware Rule of Evidence 702 controls the admissibility of expert testimony and allows a witness to provide an expert opinion if his or her testimony survives a five-step examination into whether:

(a) the witness is qualified as an expert by knowledge, skill, experience, training, or education;

(b) the evidence is relevant;

(c) the expert's opinion is based upon information reasonably relied upon by experts in the particular field;

(d) The expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and

(e) the expert testimony will not create unfair prejudice or mislead the jury.[3]

Once expert testimony is challenged, the reviewing court must ensure that the proffered testimony is both relevant and reliable.[4] Evidence is relevant if it would assist the fact finder in "understand[ing] the evidence or determin[ing] a fact in issue."[5] Expert testimony is reliable if it is premised on technical or specialized knowledge, which requires the testimony to be grounded in reliable methods and procedures and "supported by appropriate validation – *i.e.,* 'good grounds,' based on what is known."[6] Ultimately, the Court will examine an expert's opinion based on the expert's principles and methodology, not on the conclusions generated.[7] The party seeking to introduce expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.[8] There is a "strong preference" for admitting expert opinions "when they will assist the trier of fact in understanding the relevant facts or the evidence."[9]

---

[3] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006).
[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).
[5] *Id.* at 591 (quoting Fed. R. Evid. 702).
[6] *Id.* at 590.
[7] *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013) (quoting *Daubert*, 509 U.S. at 595).
[8] *Bowen*, 906 A.2d at 795.
[9] *Norman v. All About Women, P.A.*, 193 A.3d 726, 730 (Del. 2018).

Hoffman is a professional engineer and has expertise in HVAC engineering and design, among other construction-related areas. He has professional affiliations in heating, plumbing, construction, and fire protection. Hoffman has served as an expert witness and litigation consultant on a variety of construction-related issues, including those relating to HVAC systems.[10]

In his report, Hoffman and his team performed cooling and heating load calculations for four representative apartment units at the Marydale facility, inspected the installed HVAC units, and compared the designed and installed units to the load calculations.[11] Based on Hoffman's observations and calculations, he opined (1) the HVAC units installed at the Marydale Project were oversized for the anticipated cooling loads and contributed to high interior relative humidity and the resulting mold growth; (2) the ductwork installed at the Marydale Project was not properly sealed, causing duct leakage and contributing to high interior relative humidity and resulting mold growth; and (3) the HVAC systems were not tested and balanced by an independent testing and balancing firm despite contractual requirements that such testing be performed.[12] Shortly before Hoffman's deposition,

---

[10] Hoffman C.V., Ex. A to Pls' Br. in Opp. to all Defs.' Mots. to Preclude Testimony of David Hoffman.

[11] Report of David Hoffman, P.E., Ex. C to Pls' Br. in Opp. to all Defs.' Mots. to Preclude Testimony of David Hoffman (hereinafter cited as "Hoffman Report") at 10-12.

[12] *Id*. at 12-15.

Plaintiffs produced a chart that summarized the opinions contained in Hoffman's 76-page report (the "December 21st Chart").

Defendants do not challenge Hoffman's qualifications as an expert. They do, however, argue that his opinions should be precluded because they lack a reliable factual basis and are not based on any articulated standard of care. More specifically, Defendants argue Hoffman opines that the oversized units would cause "short cycling" and thereby lead to high relative indoor humidity, but he did not test any of the units to determine whether short cycling actually was occurring. According to Defendants, Hoffman also did not test the humidity levels in any of the units during the cooling months and did not articulate any standards of care that he opines Defendants violated.

DRE 702 mirrors the corresponding federal rule of evidence.[13] As such, Delaware courts find federal precedent, including *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, a persuasive resource when making expert testimony admissibility determinations.[14] "The test of reliability is flexible," and it is within the Court's discretion and responsibility to assess reliability according to each

---

[13] *See Tumlinson*, 81 A.3d at 1269 ("*Daubert* and its progeny" are the "correct interpretation of Delaware Rule of Evidence 702") (citation omitted).
[14] *Daubert*, 509 U.S. at 597.

individual case.[15] Rigid application of the *Daubert* factors[16] is not appropriate in every field of expertise.[17] Rather, the test of reliability gives the reviewing court "broad latitude when it decides how to determine reliability."[18]

As explained in the Summary Judgment Opinion, the fact that Hoffman did not gather his own data regarding the relative humidity levels in the residential units or test whether the HVAC systems were short cycling is not a basis to exclude his opinion as unreliable. Hoffman used and explained his methodology for calculating heating and cooling loads for the units and provided those calculations in his report. He based his opinion that there was high humidity on a number of items in the record, including data gathered by other experts, the reports of the residents, and the presence of mold. Experts are entitled to rely on information gathered by others to form part of the basis for their opinion. Defendants' criticisms of Hoffman's methodology or their contention that he should have conducted different or additional analyses are matters that may be explored during cross-examination, but they do not preclude the admission of his opinions at trial.

---

[15] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

[16] *Bowen*, 906 A.2d at 794-95 (outlining the several factors identified in *Daubert* that a trial judge might consider in his or her "gatekeeper" role when deciding whether an expert's testimony "has a reliable basis in the knowledge and experience of [the relevant] discipline.").

[17] *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990 (5th Cir. 1997) (noting "[n]ot every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience").

[18] *Kumho*, 526 U.S. at 141-42.

As to Defendants' contention that Hoffman failed to articulate a standard of care based on the applicable contract or customs within the industry, Hoffman's report, read as a whole, identifies the standards he opines that Defendants failed to follow. Although he does not use the phrase "standard of care," Hoffman identifies the specific contractual or industry standards that he believes applied to Defendants but were not met in this case.[19] The December 21st Chart summarizes those standards in a more consolidated fashion. Delaware law does not require an expert to invoke "magic words" or to articulate a standard of care "with a high degree of legal precision."[20]

**B. Exclusion of Hoffman's opinion is not the proper remedy for Plaintiffs' failure to comply strictly with Rule 26(b)(4)(A) and the Expert Protocol.**

Defendants separately argue Hoffman's testimony should be excluded in its entirety because Plaintiffs failed to provide a list of all the items Hoffman considered in forming his opinion. The expert protocol agreed upon by the parties in the case management order required each side to produce "a list of the documents reviewed by each testifying expert in his capacity as a testifying expert in this case."[21] Defendants contend they cannot adequately challenge Hoffman's testimony without this information because, when presented with a document at his deposition that

---

[19] *See* Summary Judgment Opinion, September 23, 2022, § II(B).
[20] *Green v. Weiner*, 766 A.2d 492, 495 (Del. 2001).
[21] D.I. 165, Ex. A, § C(1).

contradicted his opinions or report, Hoffman testified that he reviewed the document and it did not change his opinion, while refusing to comment more specifically on it.

Plaintiffs concede they did not provide the list of documents required by the case management order with respect to Hoffman's opinions. But Plaintiffs did represent to Defendants that they provided the entire record to Hoffman and confirmed that the documents he relied upon in forming his opinions are the documents listed in his March 2020 report. Although the Court does not condone Plaintiffs' failure to provide this information in a timely manner, Defendants have not demonstrated that they were prejudiced to a degree that would warrant exclusion of Plaintiffs' expert, which effectively would preclude Plaintiffs from proving their claims.[22] Any potential prejudice was ameliorated by Plaintiffs' willingness to make Hoffman available for additional days for deposition.

**C. Donze's opinions are relevant and based on reliable information.**

Defendants also moved to exclude Dr. Donze's testimony on the basis that his opinions are not relevant to the issues in this case and are not based on reliable facts. Dr. Donze is board-certified in Occupational and Environmental Medicine and was asked to opine about "the need for [indoor air quality] remediation [at the Marydale

---

[22] *See Keener v. Isken*, 58 A.3d 407, 409 (Del. 2013) (noting "the strong policy in favor of deciding cases on the merits.").

property] with respect to the actual and potential health effects" on residents.[23] In forming his opinions, Dr. Donze reviewed (1) the complaint, (2) a report prepared by – and selected sources referenced by – the occupational and environmental doctor originally hired by Plaintiffs, (3) the reports prepared by Plaintiffs' industrial hygienist in this matter; and (4) "position statements and reports from . . . public health and independent agencies."[24] Dr. Donze opines that "to mitigate existing and prevent future respiratory and other health effects associated with indoor dampness and potentially related to amplified microbial growth (especially fungal)," the indoor air quality at the Marydale Project should be "remediated and then normalized and maintained."[25] Dr. Donze states that moldy building materials should be cleaned or replaced, HVAC systems should be monitored and maintained, and the HVAC systems' design and operation should meet established indoor air quality standards.[26]

Defendants first contend Dr. Donze's report is not relevant because there is no allegation that the Marydale residents suffered personal injuries relating to the high relative humidity levels or mold growth, and the jury therefore could be confused or misled by Dr. Donze's opinion. This argument lacks persuasive force.

---

[23] K&A's Br. in Supp. of Mot. *in limine* to Preclude Testimony of Donze, Ex. 1 (hereinafter cited as "Donze Report") at 1.
[24] Donze Report at 1.
[25] *Id*. at 5.
[26] *Id*.

Defendants continue to dispute both liability and damages in this case and specifically dispute whether all the remediation and repairs that Plaintiffs undertook at the property were reasonable and necessary. At times, Defendants have characterized Plaintiffs' remediation measures as "extreme." Dr. Donze opines that all mold growth in residential spaces is harmful and must be remediated immediately. Given Defendants' position regarding Plaintiffs' claimed damages, this testimony is relevant and is unlikely to confuse or mislead the jury.

Defendants separately argue Dr. Donze's opinions are not admissible because he relied in part on a report issued by an industrial hygienist retained by Plaintiffs. That report contains hearsay statements regarding "concerns" about the residents' health. Defendants contend the record contains no reliable evidence that any resident suffered an adverse reaction or otherwise expressed specific health concerns regarding high humidity or mold. Defendants assert an expert may not rely exclusively on inadmissible hearsay to support his opinion. Although the Court agrees that Dr. Donze may not relate inadmissible hearsay to the jury under the guise of expert opinion, this is not what Plaintiffs intend to do in this case. Plaintiffs confirmed at oral argument that Dr. Donze will not testify regarding any individual resident's health concerns or conditions and instead will refer only generally to the residents' susceptibility based on their age. Dr. Donze is a practicing physician who is relying, among other things, on treatises and other reliable evidence to form his

opinion regarding the residents' age-based susceptibility. His opinion can be offered without reference to the hearsay statements to which Defendants object, and the motion to exclude his testimony on that basis therefore is denied.

**Conclusion**

For the foregoing reasons, Defendants' Motion *in Limine* to Preclude the Testimony of David Hoffman, P.E. and Motion *in Limine* to Preclude the Testimony of Richard Donze, DO, MPH are **DENIED**.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge