**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

CLIFFORD W. TRUITT,    )
    )
        Plaintiff,    )
    )
    v.    )    C.A. No. N19C-06-235 CEB
    )
BAY HEALTH MEDICAL CENTER,    )
INC., a/k/a BAYHEALTH HOSPITAL;    )
KENT CAMPUS f/k/a KENT GENERAL    )
HOSPITAL; ROSHAN D. PRABHU,    )
M.D.; TOLULOPE A. AYANGADE,    )
M.D.; FARIDA A. MALIK, M.D.;    )
CAROLE A. DYE, R.N.; AND JOHN    )
DOES 1-10,    )
    )
    )
        Defendants.    )

Submitted:  November 4, 2022
Decided:  January 19, 2023

**ORDER**

*Upon Consideration of Defendant Farida A. Malik, M.D.'s
Motion for Summary Judgment.*

**GRANTED.**

Now, on this 19th Day of January 2023, the Court enters the following Order:

1.   In this medical negligence action, Plaintiff Clifford Truitt is suing Defendant Bayhealth Medical Center, Inc. ("Bayhealth")—formerly known as Kent General Hospital ("Kent General")—and several physicians concerning the care he received while a patient at Kent General in June of 2017.  Plaintiff says this all started

1

with a mishap at home when his leg became wedged between a commode and a wall and he was stuck there for a number of hours before EMTs brought him to Kent General.[1] After a stay of several days at Kent General, during which he says he was not treated appropriately, he moved to Christiana Hospital, where surgery on his leg was undertaken and other maladies were treated.[2] But his leg was eventually amputated, a necessity which he says was caused by his treatment at Kent General.[3]

2. Without getting into the rest of Plaintiff's medical conditions, which were many and varied, suffice it to say he sued Kent General, the admitting and attending physicians, and an infectious disease specialist, Defendant Farida Malik, M.D., who is the subject of this motion. While the Complaint goes on at length about Plaintiff's medical conditions, it focuses primarily on "acute compartment syndrome" which was apparently the problem with his leg.

3. Count III of the Complaint accuses Dr. Malik of various failures concerning Plaintiff's acute compartment syndrome—basically a failure to diagnose, treat or care for Plaintiff's difficulty with his leg.[4] But her specific role in the treatment of Plaintiff is not well articulated. Some of this is understandable at

---

[1] Compl. ¶ 14, D.I. 1 [hereinafter "Compl."].
[2] *Id.* ¶¶ 25–30.
[3] *Id.* ¶ 30.
[4] *Id.* ¶¶ 64–67.

the complaint stage and the Court is well advised to exercise some restraint to give Plaintiff some space in which to develop his evidence through discovery.

4. But at some point, and most particularly by the close of discovery, Plaintiff needs at least some evidence of the Defendant's deficiencies that can be put to a jury for decision. And when the subject is medical negligence, that evidence must be supported by expert testimony to act as a template by which a jury can decide whether the conduct constituted medical negligence or not.[5]

5. Plaintiff's problem here is twofold: First, his experts—a surgeon and a family medicine specialist—are not infectious disease specialists and have described only vague familiarity with the standard of care in that specialty.[6] Second, the

---

[5] *See, e.g., Green v. Weiner,* 766 A.2d 492, 494–95 (Del. 2001) (explaining the plaintiff "must produce expert medical testimony that specifies (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury[]" to survive a motion for summary judgment); *Bonesmo v. Nemours Foundation,* 253 F.Supp.2d 801 (D. Del. 2003) (granting summary judgment where expert could offer only conclusory opinions on breaches of the standard of care); *Kardos v. Harrison,* 980 A.2d 1014 (Del. 2009) (judgment granted for the defense because expert testimony on causation was speculative); *Russell v. Kanaga,* 571 A.2d 724 (Del. Super. 1990) (explaining there must be expert testimony as to both negligence and causation to survive a motion for directed verdict).

[6] *See* 18 *Del. C.* § 6854 ("No person shall be competent to give expert medical testimony as to applicable standards of skill and care unless such person is familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify.").

experts have been deposed and both have agreed that they have no opinion to offer on the negligence, or lack thereof, of Defendant Malik.[7]

6. In response to Dr. Malik's motion for summary judgment, Plaintiff suggests that he need not show Dr. Malik's negligence through medical experts. Rather, according to Plaintiff, it is enough that his experts testify that Plaintiff's treatment was deficient and if it had been better, the amputation wouldn't have been necessary.[8] Casting that wide net, Plaintiff feels that all employees at Kent General were negligent in the treatment of Plaintiff, and he need not parse out which medical professional is to blame.[9]

7. That is not good enough. Medical professionals are the only defendants for whom the legislature has mandated an "affidavit of merit" be filed with the complaint to confirm that a third-party medical expert has reviewed the records and finds reasonable grounds to name the individual as a defendant.[10] This threshold,

---

[7] *See* 18 *Del. C.* § 6853(e) ("No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death[.]").

[8] Pl.'s Answering Br. to Def.'s Mot. for Summ. J. ¶¶ 4–10, 17, D.I. 129 [hereinafter "Pl.'s Answering Br."].

[9] *Id.* ¶ 18.

[10] *See* 18 *Del. C.* § 6853(a).

admittedly modest,[11] presumes that the Plaintiff will discover the evidence to prove up the liability he believes the named defendant bears for the injuries.

8. That did not happen here. When Plaintiff produced his two experts for deposition, they were asked specifically about any potential liability for the infectious disease defendant, Dr. Malik. The following exchange took place at the deposition of the surgeon expert:

> **Counsel**: Do you specifically attribute any breaches of the standard of care or any of Mr. Truitt's injuries specifically to Dr. Malik, the ID consultant?
>
> **Schrager**: I do not.[12]

At the deposition of the family medicine expert, the expert said:

> **Counsel**: Okay. So am I correct that there is nowhere in your report where you offer any specific criticisms of Dr. Malik?
>
> **Glassner**: That is correct.
>
> **Counsel**: Do you have any specific criticisms of Dr. Malik's care?
>
> **Glassner**: No. I don't even know who Dr. Malik is.[13]

9. The Court is painfully aware that sometimes a party may cull lines from a deposition transcript to put things in a more favorable or convincing light. After

---

[11] *See, e.g., Divita v. Sweeney*, 2010 WL 5313492, at *2 (Del. Super. Nov. 29, 2010) (describing the affidavit of merit as "a preliminary hurdle" intended to screen out "frivolous claims" for which the requirements are "minimal").

[12] Ex. C to Def.'s Mot. for Summ. J. at 55:22–56:1, D.I. 125.

[13] Ex. D to Def.'s Mot. for Summ. J. at 62:6–12, D.I. 125.

reading the full transcripts, that is not the case here—neither witness altered, amended, or contradicted that testimony in any way. Not only do they not implicate Dr. Malik in the allegedly neglectful treatment of the Plaintiff, but they also have no criticism at all to make of that Defendant.

10. In response, Plaintiff does cull through transcripts, looking for evidence against Dr. Malik. What he ends up with are only broad allegations of general negligence without identifying anyone in particular. For example, he characterizes the following dialogue in an expert deposition as a discussion of "the standard of care when it comes to Dr. Malik:"[14]

> **Counsel:** That's not what I'm asking, sir. My question is a little bit different. Would you agree that if one of the doctors there thought the best thing to look at for soft tissue injury in the compartment was MR, would you agree that this report would tell those healthcare providers who ordered that study that in fact there was not evidence of compartment syndrome?
>
> **Glassner:** My answer again is if they thought an MRI was appropriate to view a compartment syndrome, then, yes. But, in my opinion, an ultrasound would have been a better study.

11. This was not a discussion of "the standard of care when it comes to Dr. Malik," as characterized in Plaintiff's brief. It is a discussion about whether unidentified "healthcare providers" should have ordered a test different from the MRI that was ordered.[15] In fact, the rest of the discussion went like this:

---

[14] Pl.'s Answering Br. on Summ J. ¶ 2.
[15] Ex. E to Def.'s Mot. for Summ. J. at 83:3–84:24, D.I. 125.

**Counsel:** I appreciate that, sir. Just out of curiosity, who ordered this study?

**Glassner:** I do not know.

**Counsel**: Do you believe whoever ordered this study deviated from the standard of care by ordering MR imaging instead of ultrasound?

**Glassner**: That's not in my purview, I can't answer that.[16]

12. So, not only is it *not* a discussion of the duty of care of Dr. Malik, but it is not even an expression of opinion that an MRI was the standard of care—a subject the expert says is not within his "purview" and he therefore "can't answer."[17]

13. To make out a *prima facie* case against a medical provider defendant, a medical expert must testify that the named defendant's conduct fell below the standard of care for medical defendants in that field of practice.[18] Defendant did not identify an infectious disease expert—a distinct disadvantage when suing an infectious disease expert—and the two experts he does identify either do not believe the Defendant fell below the standard of care or have no opinion on the matter at all. So situated, the Defendant would be entitled to a directed verdict at the close of the Plaintiff's case if it went that far. Plaintiff has failed to demonstrate that there is any question of material fact as to the potential liability of Defendant Farida Malik and Defendant has demonstrated that she is entitled to judgment as a matter of law.

---

[16] *Id*. at 84:2–84:8.
[17] *Id.*
[18] 18 *Del. C.* § 6853(e)

14.  Summary judgment is **GRANTED** in favor of Defendant Farida Malik, M.D.

      **IT IS SO ORDERED**.


                                          Charles E. Butler, Resident Judge